AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

**United States of America**

v.

**HARMANPREET SINGH**

*Defendant*

Case No. 26-MJ-1086

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT I

On or about June 12, 2026, in the Western District of New York, the defendant, **HARMANPREET SINGH**, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).**

### COUNT II

On or about June 12, 2026, in the Western District of New York, the defendant, **HARMANPREET SINGH**, did knowingly and intentionally attempt to export from the United States to Canada, a place outside the United States, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 953(a), 960(a)(1), and 960(b)(1).

**All in violation of Title 21, United States Code, Section 963.**

This Criminal Complaint is based on these facts:

☒  Continued on the attached sheet.

RYAN D HARRELL

Digitally signed by RYAN D HARRELL
Date: 2026.06.13 18:00:04 -04'00'

*Complainant's signature*

RYAN HARRELL
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
*Printed name and title*

Sworn to before me and signed telephonically.

Date: June 13, 2025

City and State:  Buffalo, New York

*Judge's signature*

HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

STATE OF NEW YORK   )
COUNTY OF ERIE       )   SS:
CITY OF BUFFALO      )

I, **Ryan Harrell**, Special Agent with Homeland Security Investigations ("HSI") Department of Homeland Security, having been duly sworn, states as follows:

## INTRODUCTION

1.     I am employed as a Special Agent ("SA") with the U.S. Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, in Buffalo, New York. I have been employed by HSI since December of 2024. I am currently assigned to the HSI Border Enforcement and Security Task Force, an HSI sponsored law enforcement task force comprised of local, state, federal, and Canadian law enforcement officers co-located in Buffalo, New York, and tasked with combatting transnational criminal organizations exploiting vulnerabilities of the shared international border. As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 115(c)(1), who is "authorized by law or by Government agency to engage in or supervise the prevention, detection, investigation or prosecution of any violation of Federal criminal law".

2.     As a Special Agent, I attended the Federal Law Enforcement Training Center completing the Criminal Investigator Training Program and HSI SA Training. During this training, I received both academic and practical application, in the areas of informant handing/debriefing, drug packaging, pricing, importation, and trafficking methods. In addition, I received both academic and practical application training in surveillance and

1

counter surveillance techniques/methods. I received legal instruction in Federal drug conspiracy laws, preparing drugs affidavits, the Controlled Substances Act, Fourth Amendment Search and Seizures, Federal Rules of Evidence, and the execution of search warrants. Prior to this employment, I was a United States Customs and Border Protection Officer.

3.      As a Customs and Border Protection ("CBP") officer, I have worked in the following capacities; as a surveillance officer observing and recording movements or individuals trafficking in drugs and of those suspected of trafficking in drugs; I have supported numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances. Through my training and experience, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import and traffic narcotics into and throughout the United States. My investigative experience detailed herein, as well as the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.

4.      This affidavit is made in support of a criminal complaint charging **HARMNAPREET SINGH** with attempted exportation of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of Title 21, United States Code, Section 963, and possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21 United States Code, Sections 841(a)(1) and 841(b)(1)(A) (hereinafter, the "Subject

2

Offenses"). The information in this affidavit is based on my personal knowledge and upon reports and information received from other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every fact I have learned during this investigation.

## PROBABLE CAUSE

5.      On June 12, 2026, CBP officers assigned to the Lewiston-Queenston Port of Entry were conducting outbound inspections of commercial vehicles departing the United States for Canada. At approximately 1:48 a.m., a blue commercial truck bearing Ontario license plate number PB24046 hauling a white trailer bearing license plate number X3585J traveling outbound from the United States into Canada, presented itself for inspection. The truck and trailer were registered to "Pony Express Ltd." Officers identified the driver as **SINGH**, an Indian citizen and lawful permanent resident of Canada. During questioning, **SINGH** provided a negative declaration for alcohol, tobacco, firearms, or drugs. While speaking with **SINGH**, officers observed that he avoided eye contact, was profusely biting his fingers, and otherwise appeared unusually nervous. Based on your affiant's training and experience, as well as conversations with other law enforcement officers involved in border inspections, **SINGH's** demeanor was inconsistent with that of individuals engaged in routine cross-border commercial travel. Based on these observations, officers referred the vehicle for further inspection.

6.      During the subsequent inspection of the trailer, officers opened the rear trailer doors which were otherwise sealed with a red seal and observed six carboard boxes located immediately inside the trailer near the rear doors. The six boxes appeared distinct from the

3

other cargo. Specifically, the other cargo consisted of flattened cardboard boxes stacked from wall to wall secured with tension straps. In contrast, the six cardboard boxes were not incorporated into the secured load, were not restrained in the same manner as the flattened cardboard, and were loose and separate from the wall-to-wall shipment.

7.    Upon inspecting the six cardboard boxes, officers discovered approximately 50.24 kilograms of what field-tested positive for a mixture and substance containing a detectable amount of methamphetamine. A photograph depicting the rear of the trailer as officers observed it upon opening the rear trailer doors, including the location of the six cardboard boxes relative to the other cargo, is below. The six boxes are featured in red.



Seized methamphetamine

8. During a search of the truck's cabin, officers recovered multiple red plastic seals in plain view on the dashboard directly in front of the driver's seat. Officers also recovered the shipping manifest for the legitimate commercial cargo, which consisted of the flattened cardboard products secured within the trailer separately from the six cardboard boxes containing the mixture and substance containing a detectable amount of methamphetamine. The shipping manifest reflected that the legitimate cargo originated from GP Corrugated LLC, in Batavia, New York (hereinafter, the "cargo company") and were destined for Gerrity Corrugated Paper Products Ltd., located in Concord, Ontario. The red seals recovered from the cabin were visually consistent with the red seal affixed to the rear trailer doors.

9. Law enforcement subsequently spoke with a representative from the cargo company who stated that upon arrival, truck drivers are provided a singular seal to attach to the rear of the trailer. This singular red seal is only attached after a driver verifies the correct merchandise in the trailer and attaches a securing strap inside of the trailer. The representative further stated drivers are not provided with any additional red seals.

10. The recovery of multiple red seals from **SINGH's** cabin is therefore inconsistent with the cargo company's normal shipping procedures. Based on your affiant's training and experience, and conversations with the cargo company representative, and other law enforcement officers, the possession of multiple matching red seals would enable an individual to remove and replace a trailer seal without readily revealing that the trailer had been opened after departing the cargo company.

5

11.    Law enforcement also reviewed video surveillance depicting the cargo company loading the trailer. The surveillance footage showed the cargo company's employees loading the flattened cardboard boxes reflected on the shipping manifest. The surveillance footage did not depict the six cardboard boxes later discovered containing 50.24 kilograms of a mixture and substance containing a detectable amount of methamphetamine. Based on review of the surveillance footage, the six cardboard boxes were not loaded into the trailer by the cargo company at the time the legitimate cargo was loaded.

12.    Law enforcement subsequently inspected the location where the trailer was parked while being loaded at the cargo company. Investigators observed that the rear trailer doors would have been positioned immediately adjacent to a wooded, swampy area consisting of difficult terrain that would have substantially impeded access to the trailer doors. Based on observations of the location, conversations with representatives of the cargo company, and review of the cargo company's loading and parking procedures, investigators determined that the trailer remained parked in this position until SINGH assumed custody of it.

13.    Given the location of the trailer, the quantity of the mixture and substance containing a detectable amount of methamphetamine recovered, and the manner in which those six boxes were positioned immediately inside the trailer doors, your affiant submits there is reasonable cause to believe that no person had a realistic opportunity to access the rear of the trailer and load the 50.24 kilograms of a mixture and substance containing a detectable amount of methamphetamine before SINGH assumed custody and control of the trailer.

6

14.    Law enforcement also learned that **SINGH** was previously identified during a separate investigation involving a commercial vehicle attempting to cross from the United States into Canada carrying approximately 42.95 kilograms of heroin in December 2025. Specifically, **SINGH's** driver's license appeared in a Google account search warrant return obtained during that investigation in Case No. 26-mj-5137. Your affiant is aware of this information and includes it as additional context supporting the investigation described herein. Based on your affiant's training and experience, the appearance of **SINGH's** driver's license together with other licenses in a warrant return obtained during a separate narcotics investigation involving similar circumstances and a significant narcotics seizure is consistent with participation in a broader trafficking network. Your affiant knows that narcotics trafficking organizations frequently utilize multiple commercial vehicles and drivers to facilitate the transportation of narcotics.

15.    Based upon your affiant's training and experience, the approximate 50.24 kilograms of a mixture and substance containing a detectable amount of methamphetamine recovered from the trailer constitutes a distribution-level quantity of methamphetamine and is far greater than an amount typically possessed for personal consumption. Your affiant knows based on training and experience that individuals who possess controlled substances for personal use typically maintain items associated with the consumption thereof, including but not limited to straws, pipes, or other personal-use paraphernalia. During the search of the trailer and truck, law enforcement did not recover any items indicative of personal use.

7

16. **WHEREFORE**, based on the foregoing, your affiant submits there is probable cause to believe that **SINGH** knowingly possessed and attempted to export 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine from the United States into Canada in violation of the Subject Offenses. Specifically, investigators determined that the cargo company did not load the six carboard boxes containing approximately 50.24 kilograms of a mixture and substance containing a detectable amount of methamphetamine into the trailer and were instead situated separately from the legitimate cargo. The boxes were positioned immediately inside the trailer doors in a manner inconsistent with the loading and securing of the legitimate cargo. Investigators further recovered multiple red seals from the truck cabin, despite the cargo company's representation that no additional red seals are issued to drivers. Based upon the cargo company's loading procedures, review of the surveillance footage, inspection of the location where the trailer was parked prior to pickup, and the circumstances described above, your affiant submits there is probable cause to believe the six boxes containing 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine were loaded into the trailer after **SINGH** assumed custody and control of it and then resealed it with one of the red seals **SINGH** had in the cab. Accordingly, your affiant submits there is probable cause to believe **SINGH** knowingly participated in the loading and transportation of the six boxes containing 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, assumed possession of the same with intent to distribute it, and knowingly attempted to export the cocaine from the United States to Canada.

8

RYAN D
HARRELL

Digitally signed by
RYAN D HARRELL
Date: 2026.06.13
18:00:36 -04'00'

RYAN HARRELL
Special Agent
Homeland Security Investigations

Sworn to me telephonically this
13th day of June 2026.

HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge

9